Signed and Filed: July 26, 2012

_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-10272 |
| PAUL SCHIMMEL, | Chapter 7 |
| Debtor. | |
| MCCALL RIVER RANCH COMPANY, | Adv. Proc. No. 11-1138 |
| Plaintiff, | |
| vs. | |
| PAUL SCHIMMEL, | |
| Defendant. | |

## MEMORANDUM DECISION

The court held a trial in the above-entitled action on June 26-27, 2012. Spencer P. Scheer appeared for Plaintiff/Creditor McCall River Ranch Company. Craig K. Welch appeared for Defendant/Debtor Paul Schimmel. For the reasons set forth below, the court determines that Debtor should not receive a discharge.

## FACTS

Debtor Paul Schimmel (Debtor) has been an insurance agent licensed by the State of California for 28 years. He is a

MEMORANDUM DECISION                            -1-

sophisticated businessman, has an M.B.A. degree, and fully understands all the financial aspects of his insurance business.

A large portion of Debtor's insurance business involved the sale of life insurance policies, and much of the income of that business came from the receipt of renewal commissions paid on life insurance policies. A renewal commission is paid by an insurer to the agent who originated the policy when the policyholder renews the policy for a subsequent year by paying the premium for that subsequent year. Unlike the origination of the policy, which involves considerable work by the agent and for which the agent receives from the insurance company a large portion of the first-year premium, collection of the renewal commission does not require the agent to perform any services. Collection of the renewal commission is automatic for each year that the policyholder renews the policy. Stated in the most practical sense, the agent will continue to receive renewal commissions until the policyholder dies or cancels the policy.

Debtor operated his insurance business through a wholly owned California corporation called Skyda Financial, Inc. (Skyda). Debtor assigned to Skyda the right to receive all renewal commissions. Both pre- and post-petition Debtor paid his personal living expenses from Skyda's bank accounts.

Debtor filed a Chapter 7 petition in this court on January 27, 2011. In his bankruptcy schedules, Debtor listed the Skyda shares as having zero value. Debtor claimed an exemption in the Skyda shares in the amount of $100. Nowhere in the schedules or otherwise did Debtor state that he intended to claim as exempt more than $100 from the proceeds of the Skyda shares, and that

instead he claimed the entire asset as exempt.

At the section 341 meeting of creditors, the Chapter 7 trustee (Trustee) asked Debtor to produce a balance sheet for Skyda. In May 2011, Debtor provided to Trustee a balance sheet (the Balance Sheet) that showed Skyda to be insolvent, listing debts totaling $736,000, and listing only one asset, business equipment valued at $3,000. The Balance Sheet did not list as an asset any renewal commissions that Skyda expected to receive in the future in respect of life insurance policies that had been originated pre-petition. But in the first seven months after the petition date Skyda received renewal commissions in amount of $57,802. See Exhibits 14-21. (Henceforth the court will use the capitalized term Renewal Commissions to refer to those commissions to be received post-petition in respect of insurance policies originated pre-petition.)

Post-petition Renewal Commissions were deposited into Skyda's bank accounts and were used to pay personal living expenses of Debtor and his wife. At trial, Debtor did not contend that any of the Renewal Commissions were used to pay any of the debts listed on the Balance Sheet.

Debtor caused Skyda to dissolve eight months after the petition date. On September 21, 2011, he filed a Domestic Stock Corporation Certificate of Dissolution with the California Secretary of State (the Certificate). In the Certificate, Debtor stated under penalty of perjury: "The corporation's known debts and liabilities have been paid as far as its assets permitted."

At the time of its dissolution, Skyda was still entitled to receive Renewal Commissions of a significant amount. In the three

**MEMORANDUM DECISION**  -3-

months after the filing of the Certificate, insurers paid Renewal Commissions totaling more than $24,000. See Exhibits 23-26. Debtor put those post-dissolution Renewal Commissions into his personal bank account. He did not use those Commissions to pay Skyda creditors, nor did he pay those Commissions to Trustee.

The Certificate of Dissolution also stated that all of Skyda's assets were distributed by the corporation upon its dissolution. Based on the fact that Debtor put the Renewal Commissions received after the dissolution into his personal bank account, I find that the right to receive those post-dissolution Renewal Commissions was distributed from Skyda to Debtor.

Among Debtor's pre-petition debts was his liability to Plaintiff under a guarantee. Plaintiff timely filed this denial-of-discharge action on May 2, 2011.

**DISCUSSION**

A. Legal Standard for Denial of Discharge

Section 727(a)(2)(B) provides that the court shall not grant a discharge to a debtor who transfers or conceals property of the estate after the petition date with the intent to hinder, delay, or defraud creditors or the trustee.

B. Renewal Commissions as Property of the Estate

The shares of Skyda and all rights thereunder became property of the bankruptcy estate pursuant to section 541(a)(1).

The Skyda shares are not wholly exempt. Although Debtor claimed an exemption of $100 in the shares, and scheduled the value of the shares as $0, Debtor did not give notice that he was claiming the assets as wholly exempt, and is therefore entitled to claim as exempt only $100 from the proceeds of the shares. <u>Schwab</u>

MEMORANDUM DECISION         -4-

Case: 11-01138   Doc# 34   Filed: 07/26/12   Entered: 07/26/12 17:42:17   Page 4 of 7

v. Reilly (In re Reilly), 130 S. Ct. 2652 (2010).

Renewal Commissions received post-petition are received in respect of rights that exist on the petition date. Although they are contingent upon the policyholder paying the renewal premium, they are not the product of post-petition personal services by the Debtor or any action by Skyda, and are not thereby excluded from the bankruptcy estate under section 541(a)(6). Towers v. Wu (In re Wu), 173 B.R. 411, 414-416 (B.A.P. 9th Cir. 1994); Wicheff v. Baumgart (In re Wicheff), 215 B.R. 839, 841-42 (B.A.P. 6th Cir. 1998).

The right to receive Renewal Commissions was an asset of Skyda until the date Skyda was dissolved, at which time it was distributed either to creditors of Skyda or to the shareholder of Skyda. I find that Debtor caused the right to receive Renewal Commissions to be distributed to himself as the sole shareholder of Skyda.

When Debtor caused the Renewal Commissions to be distributed to himself, rather than to creditors of Skyda or Trustee, he diverted assets of the bankruptcy estate to himself.[1] This is so,

---

[1] That it may have been wrongful toward Skyda creditors for Debtor to distribute the Renewal Commissions to himself as shareholder, rather than to Skyda creditors, does not mean that the transfer was not effective and that the Renewal Commissions did not become property of the estate. Under California law, the recipient of such a transfer may be liable to creditors for the amount of the transfer, but the transfer is not void. Cal. Corp. Code §§ 2009, 2011; Pacific Scene, Inc. v. Penasquitos, 46 Cal. 3d 407 (1988).

That it would not have been wrongful to the estate for Debtor to cause post-petition Renewal Commissions to be distributed to Skyda creditors does not mean it was not wrongful to the estate for Debtor to distribute Renewal Commissions to himself. That is so, because upon the dissolution of Skyda, Renewal Commissions not distributed to Skyda creditors were distributed in respect of the Skyda shares and were clearly property of the estate as fruits of those Skyda shares. See sections 541(a)(1) and 541(a)(6).

MEMORANDUM DECISION              -5-

because that distribution was in respect of the Skyda shares, which were property of the estate under section 541(a)(1). As fruits of the Skyda shares, the Renewal Commissions were likewise property of the estate under section 541(a)(6).

Thus, Debtor transferred to himself and concealed from creditors and Trustee property of the estate consisting of Renewal Commissions received after the dissolution of Skyda. The amount of such commissions was material ($24,000).

C. Fraudulent Intent

I find that Debtor appropriated the post-dissolution Renewal Commissions to his own use knowingly, intentionally, and with the intent to defraud creditors and Trustee. In making this finding, I note and rely upon the following considerations.

First, Debtor is a very sophisticated businessman with an M.B.A. degree, who has been in the insurance business for 28 years. Debtor understood fully that Skyda's right to receive future Renewal Commissions was an asset of Skyda as of the petition date. Although the right to receive a Renewal Commission is contingent upon the policyholder paying the renewal premium, Debtor knew that policyholders routinely did so without any action by Skyda or Debtor. Debtor understood that the right to receive Renewal Commissions was not dependent upon Skyda or Debtor performing post-petition services.

Second, in his testimony, Debtor showed an excellent memory of facts regarding his business operations. He remembered the amounts of those Commissions, the policyholders in question, and the insurance companies from which the Commissions were due. It is also worthy of note that the amount of Renewal Commissions received

each month was relatively steady and predictable. Between the petition date and the dissolution of Skyda, such Commissions averaged $8,257 per month. After the dissolution of Skyda, such Commissions averaged $8,237 per month. Debtor was aware at all times of the Renewal Commissions that Skyda would collect post-petition.

Third, Debtor attempted to conceal from Trustee the existence of Skyda's right to receive post-petition Renewal Commissions. The Balance Sheet for Skyda that Debtor presented to Trustee indicated that Skyda's only asset was office equipment worth $3,000. The value of the omitted Renewal Commissions was many times the value of the assets shown.

Fourth, Debtor claimed that Skyda was insolvent in order to dissuade Trustee from liquidating Debtor's interest in Skyda, but Debtor did not act as if Skyda was insolvent. After the petition date, Debtor used the assets of Skyda to pay his personal living expenses rather than Skyda's debts. Debtor then dissolved the corporation without distributing all its remaining assets to creditors, instead distributing those remaining assets (the right to Renewal Commissions) to himself for his own personal use. This inequitable conduct toward Skyda creditors suggests that Debtor's failure to disclose the Renewal Commissions and pay them to Trustee was not the product of some innocent mistake.

**CONCLUSION**

Debtor should be denied discharge pursuant to section 727(a)(2)(B). It is not necessary to address the other bases for denial of discharge raised by Plaintiff.

**\*\*END OF MEMORANDUM DECISION\*\***

MEMORANDUM DECISION          -7-